IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

THOMAS A. CHILTON, III,

     Plaintiff,

v.                                    Civil No. 3:08cv615

T.W. CLAYBORNE, *et al.*,

     Defendants.

## MEMORANDUM OPINION

Thomas A. Chilton, III, a Virginia inmate proceeding *pro se* currently incarcerated at Sussex I State Prison ("Sussex I"), filed this action under 42 U.S.C. § 1983.[1] Chilton alleges that he was subjected to an unprovoked attack by a prison K-9 dog ("guard dog"), in violation of his Eighth Amendment[2] right to be free from cruel and unusual punishment. Claim One alleges that Defendant T.W. Clayborne ("Clayborne"), a corrections officer at the prison, sicced his guard dog on Chilton, causing the guard dog to bite Chilton on the left hip, thigh, and arm. (Compl. 5.) (Docket No. 1.) Claim Two alleges an Eighth Amendment violation by Sergeant Logan, a prison employee, for instigating the attack and then doing nothing to stop it. (Compl. 6.) Claim Three

---

[1] Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[2] "Excessive bail shall not be required, nor excessive fees imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

alleges an Eighth Amendment violation by Warden Kelly because a similar guard dog attack occurred approximately four months before Chilton's attack, also involving Clayborne, "and nothing was done to ensure that it didn't happen again." (Compl. 6.) Chilton seeks $850,000 in damages.

Because the Court's review of the record supports a finding that Chilton suffered only *de minimis* injury, the Court does not address Defendants' argument that they are entitled to qualified immunity. (Defs.' Mem. Supp. Mot. Summ. J. 8.) (Docket No. 24.) For the reasons stated below, Defendants' Motion for Summary Judgment will be GRANTED, and Chilton's Complaint will be DISMISSED.

## I. Procedural History

Defendants move for summary judgment (Docket No. 23), claiming Chilton suffered only *de minimis* injuries, meaning that he cannot establish an Eighth Amendment violation. (Defs.' Mem. Supp. Mot. Summ. J. 4.) Defendants provided Chilton a *Roseboro*[3] notice advising him of the necessity of filing competent evidence in opposition to Defendants' motion for summary judgment. (Docket No. 25.) Chilton responded to Defendants' Motion for Summary Judgment.[4] (Amended Reply to Defendant's Answer and Motion for Summary Judgment ("Pl.'s Am. Reply").) (Docket No. 35.)

In support of their motion for summary judgment, Defendants have provided sworn affidavits from Sergeant Logan, Warden Kelly, and Nurse Logue, as well as jail records showing

---

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[4] On July 8, 2009, the Court granted Chilton's Motion for Leave to Amend his response to Defendants' motion for summary judgment. (Docket No. 34.)

Plaintiff's institutional grievances, an incident report, and records from Plaintiff's visit to the prison nurse immediately following the incident. (Docket No. 24.) In opposition, Plaintiff offers sworn declarations from Shawn Davis, Albert Randolph, Ricardo Boyd, and Chase Irvine, describing Clayborne's conduct toward Chilton during the incident. (Docket No. 1.) Chilton also provides the sworn declaration of Carl Waybright, Jr. (Docket No. 1), and affidavits from Reginald Evans, Lamorris Wilson, David Green, and Charles Smith-El (Docket No. 33), regarding their experiences with and impressions of K-9 safety at Sussex I. Plaintiff's Complaint is not verified, and Chilton offers no sworn testimony based on his own experience for the Court's review. Most significantly, none of Plaintiff's proffered affidavits or declarations address the scope or nature of Chilton's alleged injury.

## II. Standard of Review

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is

3

reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving party is entitled to have "'the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

### III. Summary of Facts Viewed in the Light Most Favorable to Chilton

On the morning of April 4, 2008, Chilton and several other inmates were returning to their housing unit from the dining hall. Chilton stopped on the sidewalk because he felt sick. (Compl. 5.) Sergeant Logan, who was the Yard Supervisor that day (Logan Aff. ¶ 4), came over to Chilton and instructed him to keep moving toward his housing unit (Compl. 5). Chilton failed to respond to the order quickly. (Pl.'s Am. Reply ¶ 20 ("[W]hat the defendants term a refusal [to move as directed], Chilton terms momentary hesitation.") Sergeant Logan then sought Clayborne's assistance in directing the group of inmates back to their housing unit. (Logan Aff. ¶ 4.) Clayborne and his guard dog approached the area where Chilton, Sergeant Logan, and several other inmates stood. Chilton remained where he was and stated, "[T]hat dog don't scare me." (Logan Aff. ¶ 4; Pl.'s Am. Reply ¶ 21 ("Chilton remarked that he was not afraid of Clayborne's dog.").) Clayborne screamed at Chilton, "[M]ove!" (Compl. 5.) Chilton asked Clayborne why he was screaming. (Compl. 5.) Clayborne forced Chilton against the dining hall wall, and ordered him to turn around. (Compl. 5.) Clayborne's guard dog lunged toward Chilton and bit him on the left side of his body. (Compl. 5; Logan Aff. ¶ 4.) Clayborne then restrained

4

Chilton on the ground, releasing the guard dog's leash in the process. (Compl. 5.) The guard dog ran off, and Clayborne got off Chilton to chase the dog. (Compl. 5.)

Immediately following the incident, prison personnel escorted Chilton to the medical unit for evaluation and treatment. Nurse Logue assessed Chilton, observing that he had an abrasion on his left arm, and superficial scratches on his left hip and thigh. (Logue Aff. ¶ 3 & Encl. A (Nursing Evaluation Tool).) She also noted that he had suffered no puncture wounds. (Logue Aff. Encl. A.) Nurse Logue cleaned the affected areas with hydrogen peroxide and Betadine and provided Chilton with Band-Aids. (Logue Aff. Encl. A.) A prison doctor, Dr. Ulep, also assessed Chilton. (Logue Aff. ¶ 3.) The Nursing Evaluation Tool indicates that medical staff instructed Chilton to return to the medical unit if his condition worsened. (Logue Aff. Encl. A.) Chilton's medical records indicate that he never sought follow-up treatment regarding any injuries from the April 4, 2008 incident. (Logue Aff. ¶ 4.) Chilton does not allege, and no evidence in the record indicates, that Chilton suffered any lasting pain or injury from the incident.

## IV. Analysis

### A.   Excessive Force Claim Against Clayborne and Sergeant Logan

Claims One and Two of Chilton's Complaint allege that Clayborne and Sergeant Logan's conduct during the April 4 incident violated Chilton's Eighth Amendment right to be free from excessive force. 42 U.S.C. § 1983 provides a private right of action for deprivation of constitutional rights by persons acting under the color of law.

> Section 1983 . . . "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Hence, to establish liability under Section 1983, a plaintiff must show that the defendant, acting under

5

color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.

*Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (citation omitted).

The Eighth Amendment prohibits prison officials from using force unnecessarily and wantonly to inflict pain on inmates. *Whitley v. Albers*, 475 U.S. 312, 219 (1986). To succeed on such a claim, a prisoner must establish two requirements. *Stanley v. Hejirika*, 134 F.3d 629, 633-35 (4th Cir. 1998). First, the prisoner must make an objective showing "that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'" *Id. (quoting Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Second, the prisoner "must satisfy a subjective requirement that the force used by the corrections officers 'inflicted unnecessary and wanton pain and suffering.'" *Id.* at 634 *(quoting Hudson*, 503 U.S. at 6). The subjective inquiry examines "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 320-21 *(quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Because the Court finds that Chilton cannot establish the objective element of an Eighth Amendment claim, it does not reach the subjective analysis.

Not every injury violates a prisoner's Eighth Amendment rights. The objective component of the excessive force analysis requires this Court to determine "whether the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 *(quoting Wilson*, 501 U.S. at 298, 303). In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "absent the most extraordinary circumstances,[5] a

---

[5] The Fourth Circuit has concluded that such extraordinary circumstances are present when (1) the force used is "of a sort repugnant to the conscience of mankind," or, (2) "the pain

plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc).

"The *de minimis* injury exception stems from the recognition that there is 'a *de minimis* level of imposition [of punishment] with which the Constitution is not concerned.'" *Carr v. Deeds*, 453 F.3d 593, 606 n.4 (4th Cir. 2006) (alteration in original) (*quoting Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). Whether a given injury is *de minimis* can depend upon the context in which it is inflicted, including the extent to which an inmate provokes an altercation by conduct or words, or whether prison personnel are quelling a disturbance. *See Stanley*, 134 F.3d at 636-37; *see also Miller v. Leathers*, 913 F.2d 1085, 1089-92 (4th Cir. 1990) (Wilkinson, J., dissenting) (discussing inmate's use of fighting words).

The incident in question occurred after Chilton failed to respond promptly[6] to Sergeant Logan's instruction to move along, and after Chilton stated that he did not fear Clayborne's guard dog. Chilton's injuries consisted of superficial abrasions on his left arm and scrapes on his left hip and thigh. (Logue Aff. Encl. A.) Plaintiff provided sworn declarations from individuals whom the Court can reasonably presume to be fellow prisoners who witnessed the incident, stating that Clayborne roughly slammed or pushed Chilton against the dining hall wall. (Davis,

---

itself [is] such that it can properly be said to constitute more than *de minimis* injury." *Norman*, 25 F.3d at 1264 n.4 (internal quotations omitted) (*quoting Hudson*, 503 U.S. at 10). Even viewing the evidence most favorably toward Chilton, he fails to meet either prong of this test in the case at bar.

[6] Although Chilton describes his reaction to Sergeant Logan's instruction to move a "momentary hesitation" (Pl.'s Am. Reply ¶ 20), this characterization is not supported by a sworn affidavit or verified complaint in any of Chilton's filings. Chilton's concession that he hesitated in complying with the order comports with Sergeant Logan's sworn statement that Chilton "refused to move from the boulevard and walk back towards his housing unit after being given a direct order" by Logan. (Logan Aff. ¶ 4.)

Randolph, Boyd, Irvine Decls.) (Docket No. 1.) However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson*, 481 F.2d at 1033. Chilton does not allege any injury resulting from Clayborne's use of force in pushing him against the dining hall wall. To the extent Clayborne "let" the dog bite Chilton (Irvine Decl.; *see also* Chilton's April 9, 2008 Regular Grievance), that encounter resulted only in minor abrasions and superficial scratches. (Logue Aff. Encl. A.) Chilton "merely states that he was bitten without alleging any pain, symptoms, or complications." *Martin v. Mathena*, No. 7:08cv573, 2009 WL 150864, at *1-2 (W.D. Va. Jan. 21, 2009) (dismissing excessive force claim, in which prisoner alleged that prison guard dog bit him "twice on the elbow and once on the lower-left stomach area" at the direction of its handler, for failure to state more than a *de minimis* injury).

Chilton's injuries, as alleged, are not sufficiently serious to support the objective component of an Eighth Amendment excessive force claim.[7] Claims One and Two will be DISMISSED.

---

[7] *Compare Benenhaley v. S.C. Dep't of Corr.*, No. 8:08-2717-PMD-BHH, 2009 WL 1650431 (D.S.C. Mar. 20, 2009) (finding injury greater than *de minimis* where prisoner suffered scrapes on both knees, pea-sized nodules on the side of his head, ping pong ball-sized knots on his head, a swollen and bruised zygomatic bone, and a chipped tooth, and attending nurse's affidavit contradicted evidence in contemporaneous medical report) *with Blount v. Fleming*, No. 7:04cv429, 2006 WL 1805853, at *9 (W.D. Va. June 29, 2006) (denying excessive force claim where prisoner's medical records indicated that prisoner suffered a one-inch abrasion and a three-inch area of redness on his right forearm, and a superficial abrasion on one of his right knuckles, and prisoner did not dispute that only minimal medical treatment was required or prescribed for his injuries).

**B.** **Claim Against Warden Kelly**

Claim Three, Chilton's § 1983 claim against Warden Kelly, also fails. Chilton alleges

that Warden Kelly is responsible for the April 4, 2008 incident, "because there was an almost

identical attack approximately four (4) months before mine involving the same officer, T.W.

Clayborne, and nothing was done to ensure that it didn't happen again."[8] (Compl. 6.)

The Fourth Circuit has held that, in order to impose supervisory liability under § 1983 for

failure to train subordinates, a plaintiff must plead and prove that:

    (1)    the subordinates actually violated the plaintiff's constitutional or statutory rights;

    (2)    the supervisor failed to train properly the subordinates thus illustrating a "deliberate indifference" to the rights of the persons with whom the subordinates come into contact; and

    (3)    the failure to train actually caused the subordinates to violate the plaintiff's rights.

*Brown*, 308 F. Supp. 2d at 701. "[A] section 1983 failure-to-train claim cannot be maintained

against a governmental employer in a case where there is no underlying constitutional violation

by the employee." *Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th Cir. 2001).

---

[8] Defendants suggest that the Court should analyze Claim Three as a conditions of confinement claim under the Eighth Amendment. (Defs.' Mem. Supp. Summ. J. 7.) A conditions of confinement claim is subject to a more demanding objective component than an excessive force claim. *Strickler v. Waters*, 989 F.2d 1375, 1380-81 (4th Cir. 1993) ("[I]n order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a *serious or significant physical or emotional injury* resulting from the challenged conditions.") (emphasis added); *see also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) ("[T]he objective component of an excessive force claim is *less* demanding than that necessary for conditions-of-confinement . . . claims. . . . All that is necessary is proof of more than *de minimis* pain or injury.").

The Court analyzes Claim Three under the less demanding standard for excessive force, because it is apparent that Plaintiff cannot satisfy even the lesser showing necessary to support a cause of action for excessive force. *See Norman*, 25 F.3d at 1263. The Court reaches this conclusion because Chilton alleges nothing more than *de minimis* injury as to his own harm and fails to allege any harm as to the alleged previous incident.

Plaintiff has not established that the subordinates in question, Sergeant Logan and Clayborne, actually violated Plaintiff's constitutional or statutory rights. As Warden Kelly argues, and the Court previously noted, Chilton's injuries were *de minimis*, and thus insufficient to support an Eighth Amendment excessive force claim. To the extent Chilton argues that the incident caused him any emotional injury, "de minimis physical injuries cannot support a claim for mental or emotional injury" under § 1983. *Perkins v. Dewberry*, 139 F. App'x 599 (4th Cir. 2005) (No. 05-6303), *available at* 2005 WL 1793484, at *1 (*citing* 42 U.S.C. § 1997e(e)).[9] His claim against Warden Kelly therefore fails as a matter of law, and the Court does not reach the second and third prongs of deliberate indifference and causation. Claim Three will be DISMISSED.

## V. Chilton's Motion for Appointment of Counsel

On August 24, 2009, the Court received Chilton's Motion for Appointment of Counsel. (Docket No. 36.) Counsel need not be appointed in § 1983 cases unless the case presents complex issues or exceptional circumstances. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984); *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Plaintiff's case does not present any complex issues or exceptional circumstances. Moreover, the Court's dismissal of all three claims renders moot Plaintiff's motion for appointment of counsel. *See, e.g., Davis v. Reese*, No. 1:08cv96, 2009 WL 577594, at *5 (E.D. Va. Mar. 4, 2009); *McClary v. Fowlkes*, No. 1:07cv1080, 2008 WL 3992637, at *5 (E.D. Va. Aug. 27, 2008). Accordingly, Plaintiff's motion for appointment of counsel will be DENIED AS MOOT.

---

[9] "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

## VI. Conclusion

For the foregoing reasons, no genuine issue of material fact exists as to whether a violation of Chilton's Eighth Amendment rights occurred. Defendants' Motion for Summary Judgment will be GRANTED. Plaintiff's Motion for Appointment of Counsel will be DENIED AS MOOT.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: August 25, 2009